Curia, per O’Neall, J.
The liability of carriers of goods, both by land and water, in this State, has been placed, for many years, on the same footing which had been established by the immemorial usages of the Kingdom of Great Britain.
In our earliest cases, a distinction was attempted to be made in favor of water carriers. In 1807, in Eveleigh vs. Sylvester, (2 Brev. 178,) the Court said, “It had been determined by the *25 Courts some years ago, that the doctrine of the English law, in regard to common carriers, does not apply, in its full extent, to carriers in boats on our rivers. (That this class of carriers are not answerable for accidents, against which ordinary foresight, care, diligence and skill, such as are usually employed and exerted, by men of ordinary care and prudence, in their own affairs, are insufficient to protect them.” In that case, the boat was snagged in the usual channel of the Santee river. The particular peril, encountered in that case, was preserved, as a means of exempting a boatman from liability; but the doctrine of the case -was fortunately forgotten, in the long sleep of thirty-two years, which it enjoyed before publication. In Harrington vs. Lyles, 2 N. & McC. 88, (decided in 1819,) Judge Johnson tells us, it was with difficulty he could bring his mind to adopt the common law rule of the liability of carriers. If he had been informed, truly, of the doctrine of Eveleigh vs. Sylvester, he would, with all his great powers and authority, have enforced and maintained it; but instead of it, he referred to Eveleigh vs. Sylvester as authority for the common law rule, in its application to boatmen, and decided that case accordingly. In Smyrl vs. Niolan, 2 Bail. 421, the same rule was recognized and enforced. In that case, the peculiar peril creating the exemption in Eveleigh vs. Sylvester was placed upon its proper ground. It had been previously, in the Steam Boat Company ads. Bason, Harp. 262, put down, as an additional exception, such as could not “be guarded against by human skill and prudence.” In Smyrl vs. Niolan, it was placed as actus Dei, if a boat “ pursuing the usual channel of a river runs upon an unknown snag.” In Patton vs. Magrath & Brooks, Dud. 159, the liability of steam boat owners and masters, as common carriers, was fully established, and they were denied any exemption from perils arising from fire, in consequence of their boats being propelled by that element. So that the whole class of carriers of goods by land, or water, are now governed by the common law rule, that they are insurers against all losses or injuries which may arise from their transportation, *26 except such as are the result of the act of God, or the enemies of the country.
In Clark ads. McDonald, 4 McC. 223, it was ruled, that a carrier, the owner of a steam boat, was not liable for a slave, as he would be for a bale of goods. It was further ruled, in that case, that, if the loss arise from the act of the slave, such as not escaping f.onr under the deck of a steam boat, which had grounded, and which filled with water, where such escape was practicable, plain, and easy, the carrier would not be liable.
It did not. in that case, enter into the mind of the Court, that slaves, as human beings, must be considered as passengers; and that, so considered, the carrier was only liable on the score of negligence. That this is the true view, is apparent, the moment it is presented. For a slave’s transportation, by land or water, is not paid for by either weight or measurement. He is not stowed away as goods. He eats, and sleeps, and has locomotion, and must be provided for accordingly. These attributes do not, however, elevate him above the brute, which stands in a stall, or is secured in a cage. He has, however, reason. In this respect, however degraded his caste, he is far elevated above the brute creation ; and, as a man, he is to be carried and treated far differently from goods, or brutes. He is therefore paid and cared for as a passenger, and it is in this character that the carrier’s liability is assumed, and is to be enforced. Such was the point of view in which the Court regarded the slave of Dr. Sill, in the case of Sill vs. The So. Ca. R. R. Company, 4 Rich. 154, and that of passenger carriers ” was the liability which the Court regarded the defendants as incurring in that case. Id. 155.
Passenger carriers, Mr. Story tells us, (Story on Bail. § 601,) are not, like common carriers, insurers against all injuries, except the act of God, or the .public enemies, and are only bound to carry safely those who commit themselves to their care, “as far as humect care and foresight will go.” In section 602, he gives the consequence of this rule, that passenger carriers are not re *27 sponsible for accidents where all reasonable skill and diligence have been employed.
The defendant, although a common earlier as to the goods with which his boat was laden, was also a passenger carrier as to the plaintiff and his slaves. As to them, he was bound to carry each and all of them safely and securely, as far as human care and foresight could go. In what has he failed to perform this duty ? is the enquiry before us.
The slave of the plaintiff was wounded in one leg, so severely as to render amputation necessary: — this condition of the property would have cast upon the defendant the duty of shewing that it arose from no want of diligence on his part: but the plaintiff’s proof shewed that the slave was injured on a lighter alongside the boat, by the firing of a gun in the possession of the second engineer, the mulatto, Henry. How this can be considered negligence, on the part of the bailee, I cannot conceive. The slave’s own will and act placed him in the posilion where he received the injury. His place was on the steam boat; if he had been there, he would not have received the injury. It was therefore the consequence of his own act, and for it the defendant was no more liable than the defendant in McDonald vs. Clark.
So, too, how can an act of one of the defendant’s servants, outside of his employment, and in no way connected with it, be considered as the neglect of his bailment? If the mulatto, Henry, in the management of the boat, or engine, had, from want of skill, or negligence, caused the injury, then the, defendant would have been most clearly liable: so, too, if he were a slave, and had wilfully mismanaged either, and thereby had caused the injury, I should have held the defendant liable. But if he was a free man, as we understand was the fact, then the defendant would be no more liable for his wilful act, than he would be for the act of a white servant. Both are sui jurifi: both are legally capable of accounting for a tort civililer: a slave is not: that makes the distinction. Moore vs. Drayton, Parker & Co. vs. Gordon, Dud. 268, 270, et seq.
*28 The injury here has no relation whatever to the boat: it arose from the accidental discharge of the gun, in the hands of the mulatto, Henry. It. may be that he is liable in trespass. So. too, perhaps, the defendant would have been, if the injury had proceeded from the discharge of the gun, in his own hands. But even then his liability would have been immediate and personal, not consequential and relative. His liability would have arisen, in such a case, from his tort, not from his bailment.
It is true, in general, questions of negligence, in the performance of a bailment, are to be decided by a jury. But where the facts, m evidence, on the part of the plaintiff, fail to shew any negligence, whereby the bailee should be charged, in such case, there is nothing to go to the jury: the law steps in, and declares that the plaintiff is not entitled to recover. A nonsuit was therefore properly ordered, and the motion to set it aside is dismissed.
Evans, Withers and Whitner, JJ. concurred.
Frost, J. dissented.

Motion dismissed.